## CHESNEY v. PIONEER SUGAR CO. et al.

No. 4724.   Decided January 3, 1929.   (273 P. 760.)

*Willey & Willey* and *Van Cott & Moreton,* all of Salt Lake City, for defendant Sugar Co. and appellant Burt.

*Gustin & Pence* and *Richards & Richards,* all of Salt Lake City, for respondent.

CHERRY, J.

This is an appeal by defendant Burt from a judgment against him and in favor of the plaintiff upon a negotiable promissory note executed by him to the Pioneer Sugar Company, a corporation, by whom the note was indorsed and sold to one Woolley and by Woolley sold and transferred without indorsement to the plaintiff. Both transfers of the note were for value and before maturity. The note in question was one of a large number of notes executed and disposed of in connection with the organization and operations of the Pioneer Sugar Company. The circumstances under which the notes were executed to and disposed of by the Pioneer Sugar Company are fully stated in *National Bank of the Republic* v. *Beckstead* (Utah) 250 P. 1033, and need not be repeated here. In that case, numerous questions of law equally aplicable to the case at bar were considered and decided, but the particular question presented by this appeal was not considered or determined.

The Pioneer Sugar Company, the payee of the note in question, was a corporation with the power to engage in the manufacture of sugar from sugar beets, to acquire sugar factories by purchase or to engage in their construction, and to do all things necessary to accomplish such purposes. After the execution and delivery of the note to the Pioneer Sugar Company, it was indorsed, guaranteed, sold and delivered to Woolley in consideration of a majority of the capital stock of the Interstate Sugar Company, a corporation, which owned a sugar factory at Hooper, in Weber county. The transaction between the Pioneer Sugar Company and Woolley was fully performed on both sides. Thereafter Woolley sold and transferred the note to the plaintiff for value.

The appellant contends that the Pioneer Sugar Company had not the corporate power to purchase the stock of the Interstate Sugar Company and that the contract for the sale and transfer of the note in question to Woolley for such stock was ultra vires and void, that both Woolley and the plaintiff, though having no actual knowledge thereof were charged by law with constructive notice of the corporate powers of the Pioneer Sugar Company; that neither was a holder in due course; and that "the foregoing constitutes an available and complete defense in favor of the appellant Burt."

It is argued that such transfer of the note by the Pioneer Sugar Company was a negotiation therefor in breach of faith and under such circumstances as amounted to a fraud. Not that there was any defect in the title of the Pioneer Sugar Company to the note if it had used or transferred the same in the exercise of its authorized powers, but that on account of a transfer in a transaction beyond its corporate authority the title became defective in the hands of the transferee, who was thereby not only precluded from becoming a holder in due course but from recovering at all on the instrument. The premises of appellant's argument, viz. that the transaction was ultra vires and that the plaintiff is bound by con-

structive notice thereof, are both disputed by respondent, who insists that the purchase of the controlling stock interest in the Interstate Sugar Company, which owned a sugar factory, was within the corporate power of the Pioneer Sugar Company, and that even if it were not the plaintiff was not affected thereby in the absence of actual knowledge thereof because the doctrine of constructive notice has no application under the law of negotiable instruments to this kind of a transaction.

We find it unnecessary in the present case to decide these preliminary questions. Assuming that the negotiation of the note by the Pioneer Sugar Company was for a purpose in excess of its corporate power, and that all persons taking the note were charged by law with notice thereof, the question is presented, To whom is such defense available?

Appellant has cited two cases which he claims support his contention that the defense is available to him as maker of the note: *Jenkins* v. *P. & M. Bank*, 34 Okl. 607, 126 P. 757, and *Fehr* v. *Campbell*, 288 Pa. 549, 137 A. 113, 52 A. L. R. 506. The holding of these cases is that one who takes a negotiable instrument which apepars on its face to be the property of a corporation from an officer of the corporation, in payment of or to secure the individual debt of such officer, acts in bad faith, does not become a holder in due course, and holds the instrument subject to any defense the maker may have against the payee.

Of course, the facts in the case at bar are essentially different from those in the cases cited, and upon this difference we think the cases may be distinguished.

The purchase of a negotiable instrument from a corporation for value in due course of business, impeachable and voidable only because the particular transaction exceeded the power of the corporation, is a different transaction in morals and good faith from that where one takes a negotiable instrument appearing on its face to

belong to a corporation from one of its officers in security or payment of his individual debt. In the former there is nothing upon the face of the instrument or in the nature of the transaction which suggests or evinces wrongdoing, while in the latter the misappropriation and irregularity are apparent. With much stronger reason may bad faith be imputed to a purchaser in the latter case than in the former. Besides, in the cases cited the bad faith found against the transferees resulted only in letting in other defenses by the maker against the payee, while here the maker asserts the ultra vires transfer itself as a complete defense to the action. But if the cases cited and relied upon are not so distinguishable they cannot stand against the well-settled principle that the maker of a note cannot defeat an action thereon upon the grounds that the payee or some subsequent holder, who was a corporation, negotiated the same in an ultra vires transaction. This is plainly the effect of section 22 of the Uniform Negotiable Instruments Law (Comp. Laws Utah 1917, § 4051) which provides:

"The indorsement or assignment of the instrument by a corporation or by an infant passes the property therein, notwithstanding that from want of capacity the corporation or infant many incur no liability thereon."

The cases supporting the proposition are numerous and uniform. We content ourselves with reference to *Farmers' & Merchants' State Bank* v. *Rush,* 165 Minn. 121, 205 N. W. 951, 45 A. L. R. 1507, and to an annotation in 45 A. L. R 1509, where a large number of cases are collected upon the question. No contrary decisions have been called to our attention.

Judgment affirmed.

THURMAN, C. J., and HANSEN and GIDEON, JJ., concur.

STRAUP, J., being disqualified, did not participate; cause submitted to four Justices.